IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SAM MONET,                          )    CIV. NO. 11-00211 SOM/RLP
                                    )
            Plaintiff,              )
                                    )    ORDER GRANTING STATE
      vs.                           )    DEFENDANTS' MOTION TO DISMISS
                                    )
STATE OF HAWAII;                    )
HAWAII DEPARTMENT OF LAND AND       )
NATURAL RESOURCES;                  )
WILLIAM AILA, DIRECTOR OF THE       )
DEPARTMENT OF LAND AND              )
NATURAL RESOURCES, in his           )
official capacity;                  )
LORETTA J. FUDDY, ACTING            )
DIRECTOR OF THE DEPARTMENT OF       )
HEALTH, in her official             )
capacity;                           )
UNITED STATES ENVIRONMENTAL         )
PROTECTION AGENCY; and              )
LISA P. JACKSON, ADMINISTER         )
OF THE UNITED STATES                )
ENVIRONMENTAL PROTECTION            )
AGENCY, in her official             )
capacity,                           )
                                    )
            Defendants.             )
_____)


ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS

I.       INTRODUCTION.

         Plaintiff Sam Monet, proceeding pro se, claims

violations of various environmental laws.  Monet sues 1) the

State of Hawaii, 2) the State of Hawaii Department of Land and

Natural Resources ("DLNR"), 3) William Aila, whom Monet alleges

is the Director of the DLNR, in his official capacity, and 4)

Loretta J. Fuddy, Acting Director of the State of Hawaii

Department of Health, in her official capacity (collectively,

"State Defendants").  Monet also sues 5) the United States Environmental Protection Agency ("EPA"), and 6) Lisa P. Jackson, Administrator of the United States EPA, in her official capacity (collectively, "Federal Defendants").

Monet claims violations of the Clean Water Act, 33 U.S.C. §§ 1251-1387 ("CWA") and the Comprehensive Environmental Response Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675 ("CERCLA").  His Complaint also mentions the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. §§ 11101-11050 ("EPCRA"), but it is unclear whether the Complaint asserts a claim under EPCRA.

The State Defendants have moved to dismiss.  That motion is granted without a hearing pursuant to Local Rule 7.2(d).  This order leaves for further adjudication Monet's claims against the Federal Defendants.

II.     BACKGROUND.

Monet lives on a boat docked in the Ala Wai Small Boat Harbor.  See Complaint ¶¶ 3, 8, 15, Apr. 1, 2011, ECF No. 1. Monet complains about a parcel of land allegedly owned by the State of Hawaii that is located on the Waikiki side of the Ala Wai Small Boat Harbor and abuts the navigable waters in which Monet surfs, swims, dives, canoes, and paddles.  Id. ¶ 37.

Monet alleges that the State of Hawaii and the DLNR leased the land to a boat yard operator, whose operations

polluted the land with various hazardous materials.  Id. ¶¶ 43,
48.  Monet says that this pollution is now leaking into the ocean
from the land.  Id. ¶¶ 38, 51.  Monet alleges that the boat yard
operator closed down in 2007.  Id. ¶ 50.

Monet alleges that, on or about December 4, 2009, he
sent a complaint to the EPA, asking it to investigate the site
"for any violation of State or Federal law" because the site was
a former boat repair yard that had leaked gasoline, diesel fuel,
lead-based paint, and other hazardous material into the soil that
was leaching into the ocean.  See id., Ex. A.  Monet incorporates
this exhibit into his Complaint.  See id. ¶ 19.

Monet alleges that, in August 2010, Shinsato Engineers
performed a "core sample" of the site.  Monet says that he was
told that "petroleum products" were seen in the land.  Id. ¶ 51.
The results of this testing have not been released to the public.
Id. ¶ 51.

Monet says that, in early August 2010, he took pictures
of various items located on the land, including discarded
batteries, oil, and chemical containers, and possible hazardous
materials on the land.  Id. ¶ 52.  Monet says that he sent these
pictures to the State.  Id.  Monet says he sent the State a
notice of his intent to enforce environmental laws on August 18,
2010.  See Id., Ex. B (August 18, 2010, letter from Monet to
1) Linda Lingle, the former governor of the State of Hawaii;

2) the DLNR, and 3) Laura H. Thielen, who is described as the former Chaiperson of DLNR), ECF No. 1-2.  Monet incorporates this exhibit into his Complaint.  See id. ¶ 21.

In January 2011, Monet alleges that the State attempted to "cover up" the mess on the land by power washing the land, covering it with new soil, and removing the abandoned car batteries and containers of oil and chemicals.  Id. ¶ 54.

III.   RULE 12(b)(1) and 12(b)(6) STANDARDS.

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or attack the existence of subject matter jurisdiction in fact.  Thornhill Publ'g Co. v. Gen, Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). When the motion to dismiss attacks the "face" of the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  Here, the State Defendants contend that the allegations contained in the Complaint, including the exhibits incorporated into the Complaint by reference, are insufficient to invoke federal jurisdiction.  This is a facial attack on jurisdiction.  See Safe Air for Everyone v. Meyer, 373

4

F.3d 1035, 1039 (9ᵗʰ Cir. 2004). This court may therefore
examine the exhibits attached to Monet's Complaint. See Medici
v. Pocono Mountain Sch. Dist., 2010 WL 1006917, *2 (M.D. Pa. Mar.
16, 2010).

Similarly, on a Rule 12(b)(6) motion to dismiss, all
allegations of material fact are taken as true and construed in
the light most favorable to the nonmoving party. Fed'n of
African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207
(9ᵗʰ Cir. 1996). However, conclusory allegations of law,
unwarranted deductions of fact, and unreasonable inferences are
insufficient to defeat a motion to dismiss. Sprewell v Golden
St. Warriors, 266 F.3d 979, 988, as amended by 275 F.3d 1187 (9ᵗʰ
Cir. 2001); Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9ᵗʰ Cir.
1996). In evaluating a Complaint under Rule 12(b)(6), the court
may consider not only the allegations contained in the Complaint,
but also exhibits attached to the Complaint and matters properly
subject to judicial notice. Williston Basin Interstate Pipeline
Co. v. An Exclusive Gas Storage, 524 F.3d 1090, 1096 (9ᵗʰ Cir.
2008). Additionally, the court need not accept as true
allegations that contradict matters properly subject to judicial
notice or allegations contradicting the exhibits attached to the
complaint. Sprewell, 266 F.3d at 988. Dismissal under Rule
12(b)(6) may be based on either: (1) lack of a cognizable legal
theory, or (2) insufficient facts under a cognizable legal

theory.  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

IV.      <u>ANALYSIS.</u>

        The State Defendants move to dismiss the environmental claims asserted against them, arguing that they have Eleventh Amendment immunity from those claims.

        It is not entirely clear whether an Eleventh Amendment challenge should be analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  <u>Compare</u> <u>Edelman v. Jordan</u>, 415 U.S. 651, 678 (1974) ("the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court"); <u>In re Jackson</u>, 184 F.3d 1046, 1048 (9th Cir. 1999) ("Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings or by the court sua sponte"), <u>with</u> <u>ITSI T.V. Prods., Inc. v. Agricultural Ass'ns</u>, 3 F.3d 1289, 1291 (9th Cir. 1993) ("Eleventh Amendment immunity . . . does not implicate a federal court's subject matter jurisdiction in any ordinary sense . . . . we believe that Eleventh Amendment immunity, whatever its jurisdictional attributes, should be treated as an affirmative defense"); <u>see</u>

<u>also</u> <u>Wis. Dep't of Corr. v. Schact</u>, 524 U.S. 381, 392 (1998)
(noting that, as of 1998, the Supreme Court had not yet decided
whether Eleventh Amendment immunity is a matter of subject matter
jurisdiction).  The Ninth Circuit has since tried to reconcile
these cases by calling Eleventh Amendment immunity "quasi-
jurisdictional."  <u>Bliemeister v. Bliemeister (In re Bliemeister)</u>,
296 F.3d 858, 861 (9th Cir. 2002).

One Ninth Circuit case decided after <u>Bliemeister</u> (as
well as a few unreported cases) has continued to characterize
Eleventh Amendment immunity as going to this court's subject
matter jurisdiction.  <u>See, e.g.</u>, <u>Savage v. Glendale Union High
Sch., Dist. No. 205, Maricopa County</u>, 343 F.3d 1036, 1040-44 (9th
Cir. 2003).  However, other Ninth Circuit cases have indicated
that Eleventh Amendment immunity should be analyzed under Rule
12(b)(6).  <u>See</u> <u>Elwood v. Drescher</u>, 456 F.3d 943, 949 (9th Cir.
2006) ("dismissal based on Eleventh Amendment immunity is not a
dismissal for lack of subject matter jurisdiction, but instead
rests on an affirmative defense." (quotations and citation
omitted)); <u>Tritchler v. County of Lake</u>, 358 F.3d 1150, 1153-54
(9th Cir. 2004); <u>Miles v. Cal.</u>, 320 F.3d 986, 988-89 (9th Cir.
2003).

In this case, whether the court examines Eleventh
Amendment immunity under Rule 12(b)(1) for lack of jurisdiction
or under Rule 12(b)(6) for failure to state a claim makes no

difference, as those standards are essentially the same for purposes of this motion.  This court limits itself to examination of the allegations of the Complaint and the exhibits attached to and incorporated into the Complaint, interpreting those facts in the light most favorable to Monet.

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Eleventh Amendment has been construed to bar suits by citizens against their own states, including state agencies.  See Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1121-22 (9th Cir. 2007); Eason v. Clark County Sch. Dist., 303 F.3d 1137, 1140 (9th Cir. 2002).  The Eleventh Amendment also shields state officials from official capacity suits.  See Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ., 616 F.3d 963, 967-68 (9th Cir. 2010)

States, their agencies, and their officials in their official capacities are immune from damage suits under state or federal law by private parties in federal court unless there is a valid abrogation of that immunity or an unequivocal express waiver by the state.  See Sossamon v. Tex., 131 S. Ct. 1651, 1658 (2011); Va. Office for Protection & Advocacy v. Stewart III, 131

S. Ct. 1632, 1638 (2011); In re Harleston, 331 F.3d 699, 701 (9th Cir. 2003).

A narrow exception to a state's Eleventh Amendment immunity was established in Ex Parte Young, 209 U.S. 123 (1908). In that case, the Supreme Court recognized that a "suit challenging the constitutionality of a state official's action is not one against the State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 103 (1983) (citing Young). Under the Ex Parte Young doctrine, a federal court may enjoin a state official's future conduct when a plaintiff brings suit alleging a violation of federal law, Edelman v. Jordan, 415 U.S. 651 (1974), but not when a plaintiff alleges a violation of state law, Pennhurst, 465 U.S. at 106 (stating that "when a plaintiff alleges that a state official has violated state law," "the entire basis for the doctrine of Young . . . disappears"). To avoid the Eleventh Amendment bar to a suit, a plaintiff must allege an ongoing violation of federal law and seek prospective relief from a state official. See Porter v. Jones, 319 F.3d 483, 490 (9th Cir. 2003) ("Under the doctrine of Ex parte Young, suits against an official for prospective relief are generally cognizable, whereas claims for retrospective relief (such as damages) are not.").

There is no contention here that, with respect to the federal environmental claims asserted by Monet, Congress abrogated any of the State Defendants' immunity or that any of

them expressly waived that immunity.  Accordingly, except for the prospective injunctive relief claims under federal law asserted against Aila and Fuddy--state officials sued in their official capacities, the State Defendants have Eleventh Amendment immunity with respect to Monet's environmental law claims.  Those claims are therefore dismissed.  See Natural Res. Defense Council v. Cal. Dep't of Transp., 96 F.3d 420, 423 (9th Cir. 1996) (affirming dismissal of Clean Water Act claims based on Eleventh Amendment immunity); Celanese Corp. v. Coastal Water Authority, 475 F. Supp. 2d 623, 632-34 and n.5 (S.D. Tex. 2007) (applying Eleventh Amendment to bar CERCLA claims against an arm of the state and noting that Congress did not abrogate Eleventh Amendment immunity from CERCLA claims because CERCLA was enacted pursuant to the commerce clause and, under Seminole Tribe of Florida v. Florida, 517 U.S. 44, 59, 65-66 (1996), Congress may only abrogate Eleventh Amendment immunity when acting pursuant to section 5 of the Fourteen Amendment); Trepanier v. Ryan, 2003 WL 21209832, *3 and n.7 (N.D. Ill. May 21, 2003) (applying the Eleventh Amendment to bar claims under EPCRA for compensatory damages, but holding that, to the extent the plaintiffs sought prospective injunctive relief against state officials, EPCRA claims were not so barred).

Aila says he is the chairperson of the Board of Land and Natural Resources, which is the executive board of the DLNR, as opposed to the Chairperson of the DLNR, as alleged by Monet.

Aila and Fuddy, acting director of the Department of Health, seek
dismissal of the prospective injunctive relief claims under CWA,
CERCLA, and EPCRA (if an EPCRA claim is being asserted), arguing
that the prefiling notice requirements were not met.  The court
agrees and dismisses those claims.

A.   The Prospective Injunctive Relief Claims Under CWA
     Against Aila and Fuddy Are Dismissed.

Monet brings a citizen suit for violations of CWA
pursuant to 33 U.S.C. § 1365(a)(1), which provides:

(a) Authorization; jurisdiction

Except as provided in subsection (b) of this
section and section 1319(g)(6) of this title,
any citizen may commence a civil action on
his own behalf--

    (1) against any person (including
(i) the United States, and (ii) any other
governmental instrumentality or agency to the
extent permitted by the eleventh amendment to
the Constitution) who is alleged to be in
violation of (A) an effluent standard or
limitation under this chapter or (B) an order
issued by the Administrator or a State with
respect to such a standard or limitation, . .
.

       . . . .

The district courts shall have jurisdiction,
without regard to the amount in controversy
or the citizenship of the parties, to enforce
such an effluent standard or limitation, or
such an order, or to order the Administrator
to perform such act or duty, as the case may
be, and to apply any appropriate civil
penalties under section 1319(d) of this
title.

Except for suits brought under 33 U.S.C. §§ 1316 and 1317a, anyone filing a citizen suit under CWA must first send a notice to the Administrator of the EPA, the state in which the violation occurred, and to any alleged violator. <u>See</u> 33 U.S.C. § 1365(b)(1)(A) (stating that no citizen suit may be commenced under § 1365(a)(1) "(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order"); 33 U.S.C. 1251(d) (defining "Administrator" as used in CWA as "the Administrator of the Environmental Protection Agency"). This 60-day notice requirement is a "mandatory condition precedent to the filing of a citizen suit under the Clean Water Act." <u>Nat'l Environ. Found. v. ABC Rail. Corp.</u>, 926 F.2d 1096, 1097 (11th Cir. 1991). Accordingly, the Ninth Circuit has ruled that, when a plaintiff brings a citizen suit under CWA but fails to comply with the 60-day notice provision, a court lacks subject matter jurisdiction over the claim. <u>See</u> <u>Center for Biological Diversity v. Marina Point Dev. Co.</u>, 566 F.3d 794, 800 (9th Cir. 2009); <u>Waterkeepers N. Cal. v. AG Indus. Mfg.</u>, 375 F.3d 913, 916 (9th Cir. 2004); <u>Wash. Trout v. McCain Foods, Inc.</u>, 45 F.3d 1351, 1354-55 (9th Cir. 1995).

The purpose of CWA's 60-day notice provision is to give the alleged violator an opportunity to bring itself into complete

compliance and render unnecessary any citizen suit.  See Gwaltney
of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49,
59 (1987); Cmty. Ass'n for Restoration of the Environ. v. Henry
Bosma Dairy, 305 F.3d 943, 950 (9th Cir. 2002).

     The EPA's implementing regulations, 40 C.F.R. §§ 135.1
to 125.5, describe what is necessary before filing a CWA citizen
suit.  The regulations also set forth to whom the notice must be
sent.  40 C.F.R. § 135.2(a)(2).  Because the alleged violator is
the State of Hawaii and/or the DLNR, service was required to be
by certified mail or personal service on "the head of such
agency."  The notice attached to the Complaint indicates that it
was hand-delivered to Linda Lingle, Hawaii's Governor, as well as
to Laura H. Thielen, the then-Chairperson of the Board of Land
and Natural Resources, which is the executive board of the DLNR,
whom Monet describes as the chairperson of the DLNR.  Because the
court dismisses all CWA claims as set forth below, the court need
not decide whether Monet properly sent notice to "the head of
such agency" by hand-delivering it to Lingle and Thielen.

     To the extent Aila, the current chairperson of the
Board of Land and Natural Resources, claims that he should have
been provided notice, Aila misses the mark.  Aila has, in
essence, been substituted as the "head" of the DLNR.  The court
is unpersuaded by Aila's contention that he should have been sent
the notice because he is the alleged "violator" being sued by
Monet.  Aila is not being sued as the "violator" himself, but,

instead, is being sued in his official capacity as the "head" of the DLNR. The Complaint alleges that the State of Hawaii owns the former boat yard containing the hazardous waste and that the state is responsible for the release of hazardous materials. See Complaint ¶ 37, 38. The Complaint seeks to have the State of Hawaii comply with various federal environmental laws. The Complaint therefore does not allege that Aila himself is a violator of the CWA, but instead seeks relief from him as the person in the DLNR who can effectuate CWA compliance.

Moreover, nothing in the record indicates that, at the time Monet sent the notice, Aila was the "head" of the DLNR such that he, rather than Thielen, Aila's predecessor, should have been sent the notice. If this court were to hold that 60 days' notice was required every time a department head changed, this court would be required to dismiss properly noticed suits and force citizens to begin the process anew whenever the department head changed. This would be inconsistent with Rule 25(d) of the Federal Rules of Civil Procedure, which allows the automatic substitution of a public officer's successor when a predecessor ceases to hold office.

Even assuming Monet's notice was sent to the "head" of the State of Hawaii and the head of DLNR, the notice was insufficient, as there is no indication that a copy of the notice was sent to the Administrator of the EPA, the regional administrator of the EPA, or the chief administrative officer of

14

the water pollution control agency for the state of Hawaii.  See
40 C.F.R. § 135.2(a)(2).  Accordingly, Monet's CWA claims must be
dismissed because Monet failed to properly provide the required
notice.  See Swanson v. U.S. Forest Serv., 87 F.3d 339 (9th Cir.
1996) (affirming dismissal of CWA claims against all defendants
when notice was not sent to EPA); accord Allens Creek/Corbetts
Glen Pres. Group v. Caldera, 88 F. Supp 2d 77, 85 (W.D.N.Y.
2000).

Dismissal is also required because this court lacks
subject matter jurisdiction given the insufficiency of the
content of the notice.  See Ctr. for Biological Diversity, 566
F.3d at 803-04 (holding that a district court lacked jurisdiction
to adjudicate CWA claims when CWA notices were insufficient).
The implementing regulations describe the required contents of
the required notice:

> Notice regarding an alleged violation of an
> effluent standard or limitation or of an
> order with respect thereto, shall include
> sufficient information to permit the
> recipient to identify the specific standard,
> limitation, or order alleged to have been
> violated, the activity alleged to constitute
> a violation, the person or persons
> responsible for the alleged violation, the
> location of the alleged violation, the date
> or dates of such violation, and the full
> name, address, and telephone number of the
> person giving notice.

40 C.F.R. § 135.3(a).  Although Monet's "notice" complained of
the "boatyard" being a "superfund site," it did not describe what
effluent standard or limitation was being violated.  See

Complaint, Ex. B, ECF No. 1-2.  The notice Monet attaches to his

opposition to the motion to dismiss, even if considered, is

similarly deficient.  <u>See</u> ECF No. 16-1.

Accordingly, Monet's CWA claims for prospective

injunctive relief against Aila and Fuddy are dismissed pursuant

to Rule 12(b)(1).  To the extent Monet requests that he be

allowed to file an Amended Complaint after he complies with CWA's

notice requirement, that request is denied as inconsistent with

the purpose of the notice provision, which is to allow an alleged

violator to cure the violation before a suit is brought.

B.    The Prospective Injunctive Relief Claims under
      <u>CERCLA Against Aila and Fuddy Are Dismissed.</u>

Congress enacted CERCLA "in response to the serious

environmental and health risks posed by industrial pollution."

<u>U.S. v. Bestfoods</u>, 524 U.S. 51, 55 (1998).  The Supreme Court has

characterized CERCLA as "a comprehensive statute that grants the

President broad power to command government agencies and private

parties to clean up hazardous waste sites."  <u>Id.</u> (quoting <u>Key</u>

<u>Tronic Corp. v. U.S.</u>, 511 U.S. 809, 814 (1994)).

Like CWA, CERCLA allows citizen suits, stating with

exceptions not relevant here that:

> any person may commence a civil action on his own
> behalf--
>
> (1) against any person (including the United
> States and any other governmental
> instrumentality or agency, to the extent
> permitted by the eleventh amendment to the
> Constitution) who is alleged to be in

> violation of any standard, regulation,
> condition, requirement, or order which has
> become effective pursuant to this chapter
> (including any provision of an agreement
> under section 9620 of this title, relating to
> Federal facilities);

42 U.S.C. § 9659(a)(1).

Also like CWA, CERCLA requires notice of a violation to be sent to the following at least 60 days before a citizen suit can be filed pursuant to § 9659(a)(1):

> (A) The President.
> (B) The State in which the alleged violation occurs.
> (C) Any alleged violator of the standard, regulation, condition, requirement, or order concerned (including any provision of an agreement under section 9620 of this title).

42 U.S.C. § 9659(d)(1). Proper notice is necessary to give this court subject matter jurisdiction over such a citizen suit. See Rennie v. T&L Oil Inc., 540 F. Supp. 2d 1198, 1202 (N.D. Okla. 2007); Frost v. Perry, 919 F. Supp. 1459, 1469 (D. Nev. 1996); Pollution Control Indus. of Am., Inc. v. Reilly, 715 F. Supp 219, 221 (N.D. Ill. 1989).

"The purpose of this notice requirement is to ensure that a private citizen does not interfere with the government's diligent prosecution of the environmental violation." Rennie, 540 F. Supp. 2d at 1201. Here, nothing in the record indicates that the notice was provided to the President.

The CERCLA notice is also insufficient. It makes sense that, like CWA's notice provision, CERCLA's notice provision is

intended to allow a violator to cure.  Accordingly, CERCLA's

applicable implementing regulation, 40 C.F.R. § 374.3(a),

provides:

> Notice regarding an alleged violation of a
> standard, regulation, condition, requirement,
> or order (including any provision of an
> agreement under section 120 of the Act,
> relating to Federal facilities) which has
> become effective under this Act shall include
> sufficient information to allow the recipient
> to identify the specific standard,
> regulation, condition, requirement, or order
> (including any provision of an agreement
> under section 120 of the Act, relating to
> Federal facilities) which has allegedly been
> violated; the activity or failure to act
> alleged to constitute a violation; the name
> and address of the site and facility alleged
> to be in violation, if known; the person or
> persons responsible for the alleged
> violation; the date or dates of the
> violation; and the full name, address, and
> telephone number of the person giving notice.

As discussed in the section above with respect to the notice for

the alleged CWA violations, Monet's notice did not provide

sufficient information to allow any recipient to identify how

CERCLA was allegedly being violated.  See City of Waukesha v. PDQ

Food Stores, Inc., 500 F. Supp. 2d 1119, 1121-22 (E.D. Wis. 2007)

(noting that, when a notice timely provides the proper persons

with actual notice of a violation of a standard, regulation,

condition, requirement, or order, it satisfies CERCLA's

jurisdictional prior notice requirement for citizen suits)

Accordingly, Monet's prospective injunctive relief

claims under CERCLA against Aila and Fuddy must be dismissed

pursuant to Rule 12(b)(1).  To the extent Monet requests that he be allowed to file an Amended Complaint after he complies with CERCLA's notice requirement, that request is denied as inconsistent with the purpose of the notice provision.

        C.    The Prospective Injunctive Relief Claims Under
                 <u>EPCRA Against Aila and Fuddy Are Dismissed.</u>

Because the Complaint only mentions EPCRA, it is unclear whether Monet meant as asserting a claim under it.  Even construing the Complaint liberally as asserting such a claim because Monet is <u>pro se</u>, any prospective injunctive relief claim under EPCRA against Aila and Fuddy must be dismissed for lack of subject matter jurisdiction.

The Supreme Court has explained:

> EPCRA establishes a framework of state, regional, and local agencies designed to inform the public about the presence of hazardous and toxic chemicals, and to provide for emergency response in the event of health-threatening release. Central to its operation are reporting requirements compelling users of specified toxic and hazardous chemicals to file annual "emergency and hazardous chemical inventory forms" and "toxic chemical release forms," which contain, inter alia, the name and location of the facility, the name and quantity of the chemical on hand, and, in the case of toxic chemicals, the waste-disposal method employed and the annual quantity released into each environmental medium.

<u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 86-87 (1998).

Like CWA and CERCLA, EPCRA contains a citizen suit provision.  See 42 U.S.C. § 11046(a)(1)(A)-(C).  But, as with CWA and CERCLA, at least 60 days before a citizen suit alleging an EPCRA violation is filed, certain notices must be provided.  That is, before a citizen suit against an owner or operator of a facility is filed, prior notice is required.  See 42 U.S.C. § 11046(d)(1).  Before a citizen suit against the Administrator of the EPA, a State Governor, or a State emergency response commission is filed, notice must be provided to "the Administrator, State Governor, or State emergency response commission (as the case may be)."  Failure to comply with the notice requirements for citizen suits under EPCRA deprives this court of jurisdiction.  Alt. States Legal Found. v. United Musical Instruments, U.S.A., Inc., 61 F.3d 473, 478 (6th Cir. 1995); Hassain v. City of Chicago, 1999 WL 89612, *2 (N.D. Ill. Feb. 12, 1999).  Requiring such notice for citizen suits under EPCRA facilitates dispute resolution and reduces the volume of costly litigation.  Alt. States Legal Found., 61 F.3d at 478. It also allows government agencies to fully and adequately evaluate the alleged violations and allows a violator to cure the alleged violation before a suit is brought.  Sierra Club Ohio Chapter v. City of Columbus, 282 F. Supp. 2d 756, 764 (S.D. Ohio 2002).  For that reason, the notice must be detailed enough that it will allow the EPA to make a decision as to whether the EPA

will take action and allow the alleged violator to cure.  As discussed above, the notice sent by Monet does not provide the required level of detail, as it does not describe how the EPCRA was allegedly violated.  Accordingly, the prospective injunctive relief claims under EPCRA against Aila and Fuddy are dismissed pursuant to Rule 12(b)(1).  To the extent Monet requests that he be allowed to file an Amended Complaint after he complies with EPCRA's notice requirement, that request is denied as inconsistent with the purposes of the notice provision.

V.      CONCLUSION.

For the foregoing reasons, all CWA, CERCLA, and EPCRA claims (if asserted) against the State Defendants are dismissed. This order leaves for further adjudication the claims asserted against the Federal Defendants.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 14, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge